and the Secretary of Health and Human Services, and others. Brian Springer is here for the Amicus. Brant Hardaway and Henry Whittaker, well, Brant Hardaway is here for the Health Freedom Defense Fund, and Mr. Whittaker is here for the Amicus. And Mr. Springer, you may be seated. Thank you, Your Honors, and may it please the Court, Brian Springer on behalf of the federal government. In the middle of the pandemic, the CDC issued the challenge order that required people to wear masks during air travel and on other public transportation. The Supreme Court in Alabama Association of Realtors recognized that the CDC can issue conventional measures to identify, isolate, and destroy communicable diseases. Masking is just such a conventional and long-standing measure to prevent the spread of disease. Indeed, wearing a mask was one of the most modest and most effective means available in early 2021 to combat the spread of COVID-19 and to allow air travel to resume safely. The CDC had authority to issue this order and to do so to make the order effective immediately, and the District Court erred in ruling otherwise. I'll just tell you, the hardest part of your argument to me is making the order a boilerplate statement that COVID exists is not enough to satisfy the good cause provision of the APA that lets something be effective immediately. And when I look at what the CDC wrote here, it's one sentence, and I can't imagine anything more boilerplate than what they wrote. So what do you say about that? Your Honor, what the CDC said in the order is not boilerplate. The CDC said that considering the public health emergency that it was necessary to make this order effective immediately, and it was referring to its substantive findings earlier in the order. I think the important thing to do is to put ourselves in the mindset of early 2021. The country had just gone through the first COVID winter. There were cases on the rise. We had just passed 25 million infections and were reaching the place where we would have almost half a million deaths. The CDC explained that there were variants that had just been detected that showed signs of increased transmissibility, and people were starting to travel again. In those circumstances, the CDC had good cause to issue this order, particularly when the CDC detailed the reasons why in this particular environment, namely in the transportation sector and transportation settings, COVID had a specific tendency to spread among people who are standing together in lines and sitting together on conveyances. So it seems like your argument is that we as a court could find good cause, but what about what the CDC actually said, which is just that one sentence? The APA is a straitjacket for agencies. It tells agencies what they have to do, and then we review what they do. Why would we find good cause for them instead of requiring them to do it themselves? Your Honor, the court doesn't need to find good cause for the agency. The agency detailed the good cause. No, I'm saying, okay, point me in the order. I've got it. Where do they say that all of that stuff that you just said is the basis for their good cause finding? Your Honor, the agency's specific statement of good cause says considering the CDC details- Yeah, and I guess that's my point. Didn't we say in an opinion by Jill Pryor and Robin Rosenbaum that boilerplate statements that COVID exists and there's a public health emergency is not sufficient to satisfy the good cause standard? Your Honor, again, this isn't- Didn't the Supreme Court say that too? Your Honor, the Supreme Court said that there needs to be something specific, and here the CDC has provided something specific. Okay, where do they say that the good cause, I mean, just where do they say that? Your Honor, as I mentioned, the CDC in talking about good cause says considering the public health emergency- And is that not exactly, how is that not exactly the kind of boilerplate statement that we said is insufficient? I guess, explain to me if that's not the kind of boilerplate statement that we said was insufficient, then what conceivably could be the kind of boilerplate statement that we said was insufficient? Your Honor, I think it could be a problem if the CDC hadn't explained what the public health emergency was, but here the- So if the CDC had just said there exists a public health emergency, we're not going to explain what it is, that's good cause. You think that's what we were talking about when we said that COVID-19 is not itself sufficient? Your Honor, that would present a harder case, but- Oh, that would present a slam dunk case, which is kind of what we got here, right? Your Honor, I don't think that's right. Here, the CDC has detailed exactly what the public health emergency was at the time and the reasons that justified this order. Okay, why explain to me, so the APA requires 30 days, right, of notice and comment. Where can I find in the order a good cause finding that there would be, that the public interest requires that this order go into effect without 30 days lag, right? That's the good cause finding that needs to be made, not that there's a reason for the order, right, which is something else the APA requires. Every agency has to have a reason for the order, but where does it say that there's good cause that if we wait 30 days to have notice and comment, then that will be a problem? Your Honor, I think it's something more than 30 days to think about here because the CDC here- Let's say it's 60 days. Where does it say that in the order? Your Honor, the CDC- The answer is that it doesn't say that in the order. Is that your answer? Your Honor, the CDC- Because I think that's the truth, right? It doesn't say that in the order. Your Honor, I think the important thing to return to is that the APA only requires a brief statement of reasons and the Supreme Court in Biden v. Missouri explained that this is just something more. The CDC's good cause finding here, its explanation of what was going on and the reasons that it was issuing the order immediately mimic those that were at issue in Biden v. Missouri- Would you like me to read? There's not enough time for me to read you the good cause findings from Biden v. Missouri because it's four and a half pages, right? Explaining why specifically waiting the 30 days for notice and comment would harm the public interest. So let's just draw the Biden v. Missouri. Your Honor, in Biden v. Missouri, CMS relied on the fact that there were variants with increased transmissibility. That's the same thing that the CDC said here. The CMS rule also explained that in the context specifically of healthcare, that there was a particular risk of the spread of COVID to sick patients. Here the CDC explained, and this is in line with this court's decision in transportation sectors, where people stand together in long lines and sit next to each other on planes and other public transportation and are likely to get sick. So once again, and honestly, I'm just having a difficult time with this because every agency has to have a reason for an action, right? You agree with me there, like an agency can't just make an action that it believes is bad, right? Arbitrary and capricious review applies. If the agency said like, this is a bad idea, but we're going to do it anyway, that would be a problem. And then on top of having a reason for the agency action that says, this is good, we think this is a good thing to do, to get out of notice and comment, you have to have good cause. Just the problem I'm having with your entire argument on this issue is that it seems like you're saying the agency can just say, we think this is a good idea, and the good idea, the reasons why they think it's a good idea, that satisfies good cause. Explain to me if that one, is that your position? And if it's not your position, then how are you making the argument that you're making? Your Honor, our position is that the CDC, by saying considering the public health emergency, was referring to the substantive findings. Oh, I know. Yeah, I get your point. You're saying it referred back to the substantive findings about why it made the order. I guess my point is, isn't the good cause, doesn't that require something more than just these are the reasons why we have the order to begin with? Your Honor, here the reasons for the order are also the reasons to move quickly, and the agency explained that. I think the volatile situation that the CDC was addressing didn't lend itself to notice and comment, given particularly the evolving condition of the pandemic, and the updated science that the CDC was considering, and that these were reasons that the CDC felt the need to act quickly to protect the public health and ensure that a new variant that had shown levels of increased transmissibility didn't rapidly spread through the public as they started to travel again. How long would the regular notice and comment period have been? Your Honor, the statute requires, I believe in general, that the notice and comment period be 30 days, but in that 30 days, it's possible that our understanding of COVID-19 could have changed, the specific context of the pandemic, the conditions could have changed, and so the CDC felt the need to act quickly right after we had gone through the first COVID winter and were experiencing the possibility of a new variant, which eventually came to dominate the... Can you... No, go ahead, go ahead. I was going to say, I guess the concern, I think, is that what you just said is not in the regulation, and all you had to do is say that in the regulation, right? Your Honor, the CDC... If we wait 30 days, we're going to compromise thousands of lives, something to that effect. Can you make an argument that that wasn't necessary? Your Honor, the CDC is not required to do that. All that the APA requires is a brief statement of reasons for why it would be impractical or impracticable or contrary to the public interest to proceed with the CDC did. It explained the emergency at the time and the reasons that the CDC needed to put this order into place to prevent the possible infections and death that could result if people didn't do the simple thing of just putting on a mask while they were traveling. I want to be able to ask your opponent some questions about the other issues. Could you move on to the merits of the district court's ruling about constitutional authority and the nationwide injunction? Yes, Your Honor. I think as to the statutory authority question, the important place to look is the Supreme Court's decision in Alabama Association of Realtors that recognized that conventional measures to identify, isolate, and destroy communicable diseases fall within the statute. Here, the CDC's mask order was a very modest way and a traditional way to prevent this interstate spread of disease that falls directly within the heartland of what the Supreme Court told us that this statute covers. The Supreme Court has already told us what the connection is between the enumerated terms in the statute, that they cover these conventional measures, and also that those terms are just full waterfront of what the CDC is allowed to do. I would also just point to the fact that masks have been used for many years in this capacity. They were used during the 1918 flu pandemic, and they've been used by doctors for decades to prevent the spread of disease. This is just a conventional measure that the CDC issued in order to ensure that people didn't get sick when they started to travel again at the height of the pandemic. I'm also happy to turn to the arbitrary and capricious issue just to talk about it for a minute if the court doesn't have questions about the statutory authority. Could I ask you a question about the remedy? I guess I say I'm sympathetic to your arguments on the remedy, but it seems like they're foreclosed by 11th Circuit case law. Could you explain to me why they're not foreclosed by 11th Circuit case law? Your Honor, I'm not sure which case your Honor is referring to in particular, but I would point the court to the recent decision in Georgia v. President of the United States, which involved the federal contractor mandate. That one was one in which this court narrowed an injunction because of the underlying principles of Article III of needing to tailor the remedy to the specific harms of the pandemic. What I'm talking about specifically is our case law on APA that has affirmed vacators that have nationwide effect like this one. Your Honor, this court's cases say that vacator is the ordinary remedy in one of these cases, but also in an APA case. But those cases also recognize that vacator is equitable, and equitable principles like Article III limitations include the idea that any remedy should be limited to remedying the actual party's case. Here, the district court didn't justify extending a remedy beyond the five individuals who identified themselves and agreed to be vaccinated. So your argument then is that vacator is okay, which of course it is because it's provided for in the statute, but that the district court should have done something more than vacator, should have enjoined application to the specific individuals? Your Honor, I think the right way to think about it is that vacator should have been limited to the parties. Vacator by itself doesn't imply that it extends across the rule. You can vacate. The mask order should have been vacated just as to these individuals. So in a case called Alabama versus Center for Medicare and Medicaid Services, we affirmed the district court's vacator of an agency letter, which this agency stuff is very weird, but so there was a letter and the district court vacated the letter in the APA, and in that case we said it's not necessary to issue an injunction because of the vacator. You may not be familiar with that case. Just assume that that's what we said. If that's what we said, how would that be consistent with your argument that vacator is somehow limited and must be, how is that consistent with your argument? So Your Honor, I'm not sure if, I'm not familiar with that case, and I don't know if the question was presented whether vacator could be applied on an individual by individual basis instead of vacating the entire agency action. It would depend on the specific circumstances of the case. Judge Sutton in his concurrence in Arizona explains to some degree why the language of the APA should be read against the backdrop of equitable principles and why the phrase set aside is not one that necessarily requires an entire vacator of a rule, but instead can be, you know, the ultimate question is against whom should it be vacated or should it be set aside, and given this court's recognition that vacator is an equitable remedy, it's one that should be limited to the parties who have actually shown a harm, identified themselves, and agreed to be bound by a judgment ahead of time. I mean, isn't one of the background principles that, and the Supreme Court, I think, said this for now, I can't remember the name of the case. The Supreme Court has said the government is an ordinary litigant and is not subject to the traditional principles of collateral estoppel. So if the government loses a case in the District of Wyoming on the validity of a statute, that holding doesn't bar it through the use of affirmative or defensive non-mutual collateral estoppel from defending the same statute in New Jersey. And so that the government can litigate, get different rulings in different places so that it can then go up to the circuits, see what the circuits think, and if there's a split, then go into or try to get into the Supreme Court. But if you have a nationwide injunction, then whatever the second or third or fourth or fifth district courts do is of no moment, because whoever you got to first is going to determine the effect of the statute or not the effect of the statute for the entire country. And that it seems to me that a nationwide injunction, at least in a great number of cases, cuts against the Supreme Court's recognition. I think the case is called Mendoza, if I'm not mistaken, from the mid 80s, that the government is not a typical litigant with regard to the rules of collateral estoppel. It's not like if you do IBM for one of its employment-related policies in Wyoming, that ruling, if IBM has a full chance to litigate, might be binding on it in the same sort of case in New Jersey, but not so for the federal government. That's correct, Your Honor. And I think this case demonstrates that to a sharp degree because here the district court's ruling that vacated the mask order nationwide preempted the ruling from the other district judge, Judge Byron, that ruled the other way and also stopped all these other cases that had been filed across the country from moving forward because the district court here took an action that entirely wiped away this mask order. Can I ask a practical question on this issue? So we're now not a district court, we're now a court of appeals that covers three states. If we were to affirm on the merits, and say that the mask order is illegal, but we were to reduce the remedy in some way, we cover three states, so the law of the 11th circuit would be the mask is illegal. How would practically speaking that work? The appropriate relief here would be to limit the remedy to the five individuals who identified themselves and agreed to be bound. Of course, a ruling by this court on the merits would bind any other courts in this circuit and be binding law, but just within this circuit and not outside. Right. So I mean, I guess, and you may not know the answer to this, but practically, so if I get on a plane in Atlanta, then I don't have to wear a mask until it gets over Kentucky? I mean, is that the way it would work? Like once I fly on the plane, if I'm going to Cincinnati, once I get in over the airspace of some other circuit, then the mask mandate would apply to me then? Your honor, I don't want to speak to exactly how the CDC would, what the CDC would decide to do in a situation like that, where, you know, the mask order may not be applicable in certain jurisdictions in the country. The CDC would need to reevaluate whether to, you know, the need for this order and how to enforce it in that circumstance. So I can't speak to the exact practicalities. It would depend on exactly what the court said and what the basis for the ruling was and how the CDC decided to proceed in the face of that ruling. All right, Mr. Springer, you've reserved some time for rebuttal. Let's hear from Mr. Hardaway on behalf of the Defense Fund. Good morning, your honors. And it's Hadaway, if I may, no relation to the basketball player. If you may please the court, let me begin by noting an irrebuttable fact, which is that CDC, the government has shown by its actions or inactions, if you will, that this appeal is not about an urgent matter of public health. If the mask order had been such an urgent matter of public health, you would have expected CDC to have applied for a stay of the district court's ruling. You're not required to do that, though. You're not required. But if you're saying we're defending the public health, we're protecting lives. This is a matter of life and death, which is what they said in the rule. And you would have expected them to come in and say, you know, Judge, we need you stay this because people are going to die. When did the district court issue its order? April 18th of of 2022. Were vaccines in place by then? Oh, yes. Wasn't that change part of the calculus about why the government might decide not to seek a stay? Well, you know, I mean, you're saying you're whatever you think of a mask mandate and whatever you think of covid-19, the world had medically changed from the time that the mask mandate was put into place by the CDC. And by the time the district court ruled, we had learned more about the disease and vaccines had gone on the market and had been in place for a while. It just seems crazy to me for for you to think that the government was required to move for a stay in that sort of a changed circumstance. Well, actually, your honor, the you know, the point I'm making is that the government obviously didn't think the mask order was necessary at the time. And so and here we are many months later, we're here before you. But the reason is because the correct or incorrect, it wants the ability to be able to put something like that in place in the future. I think that's exactly why we're here. And and we're and the reason is that while CDC has not invoked Chevron, and that's a very important thing to keep in mind, is the CDC waived Chevron to the extent that they could assert it at all, because the case law is very clear that you can't invoke Chevron for a post hoc rationale. And that's what this was. CDC promulgated a rule of unprecedented scope. And for the first time claiming authority to directly govern the lives of every member of the traveling public, without bothering to explain its statutory authority. And then the Supreme Court handed down his decision and Alabama Realtors and said, well, it has to be one of these numerated measures in the second sentence, or something like that. And CDC, what said those were illustrative, right? That illustrative, in the terms of, you know, when you have illustrative words, they have to be, you know, if they have to be associated in some way, is associated with what? With disease prevention? Well, no, that's the problem, is that there's no limiting principle if you take it, if you go down that road. I mean, if you look, if you look at, we construe statutes all the time, and we deal with discretion given to government agencies all the time, too. And when you have language like, as in his judgment may be, and other measures as in his judgment may be necessary, such regulations as in his judgment are necessary, that's found twice in the statute. That's pretty broad language, do you think? It's broad language, but the, and I believe the Supreme Court in Alabama Realtors had basically said that, you know, that's not a catch-all that gives license to swallow the rest of the words in the statute. You can't, you know, because otherwise you basically render those words as mere surplusage. And tell me what, what on the merits, what part of the statutory language is inconsistent with a mask mandate? Well, let me talk about first, the CDC's sort of broad definition of sanitation is that it could be basically any sort of public health measure. Yields, would yield three absurd results. Well, the district court agreed that there were two possible definitions of sanitation, and it chose the narrower one. Well, it didn't tell me why that's correct. The district court didn't just choose the narrower definition like you would select out of an a la carte menu. The district court looked to the Doctrine of Nocitor Associus, words are known by the company they keep, and said, basically pointed out that the word sanitation traveled in company with inspection, fumigation, disinfection, pest extermination, and destruction. And what those words have in common is that they're active measures that go to identifying, isolating, and destroying disease. So what did the district court do with the words, quote, other measures? Well, other measures can't be just a catch-all that would swallow all those words, because otherwise, Congress would have said that the Surgeon General or CDC, as it is now, can enact rules that are deemed necessary to protect the public health. That would have been... Okay, so let's talk about, you said the company that wards keep. Yes. The word inspection has been used in federal law since the late 19th century to refer to the physical inspection of people coming into the United States. So tell me what's consistent with the word inspection and a mask mandate? Well, because the foreign quarantine authority is covered by subsection C of the statute. It's not... That's not my point. My point is that the word inspection has been used in federal law since the late 19th century to refer to individuals that the federal government can, quote, unquote, inspect individuals when they come into the United States. So what's inconsistent with the use of the word inspection and the mask mandate? Well, assuming CDC had argued based on the word inspection, we'll take that just for the sake of... We're not limited to... We've said numerous times that we're not limited to a party's interpretation of a statute. Fair enough. The word inspection refers to, and if you look at the statutory scheme, it refers to identifying somebody who is either infected with disease or has been exposed to, knowingly exposed to a disease. And those are the measures, lead to measures, what are called isolation and quarantine. Isolation is when you have somebody you know is sick and you isolate them until the disease has run its course or they expire or whatever happens. And quarantine comes from a very old principle that if somebody is suspected of having been exposed to the disease, you quarantine them, you separate them from the population until the incubation period has passed. And so that inspection... And it also refers, of course, to vessels, to conveyances. Quarantine is a much less... It's a much more intrusive restriction to prevent the spread of a communicable disease than a mask, though, isn't it? Well, what the district judge said, and I think she was correct about this, is that... It seems strange to me that the Center for Disease Control doesn't have the authority to issue a mask mandate, but it does have the authority under subsection D to quarantine to prevent the spread... I think you get the first clue to why that would be, Your Honor, is if you look at the first sentence of 264A, which is the grant of authority, and it's to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the states or possessions, or from one state or possession into another state or possession. So what this is saying is that the CDC's authority is to prevent disease from crossing borders. It's not to prevent the interpersonal communication of disease. It's not to prevent the intrastate communication of disease. It's to prevent it from crossing borders. And the CDC has its own condition for issuing rules and regulations. It has to make a specific finding that the measures that are being taken by the states are insufficient. So if you've got a completely communicable disease that is deadly, the CDC can't regulate the wearing of masks at an airport. People are calling, you and I are next to each other at an airport, I've got the disease, don't know I had it, I breathe on you, you keel over and die. The CDC can't regulate the wearing of masks in that circumstance. Not under the statute as it exists. And, you know, that's where Congress comes in. Congress, you know, remember, this was a year into the pandemic when... How would you modify the statute to allow the CDC authority to do what Judge Jordan is suggesting? If you were Congress, what would you do? What do you think is necessary for Congress to say? Well, I think you would first have to, you know, contend, obviously, with the dual sovereignty issues that have to do with the general police power of the states to regulate public health. And I think what you could say is that the Centers for Disease Control or the CDC shall have, shall be authorized to impose health regulations on or conditions on the entry to, you know, to interstate conveyances. You know, the problem you run into, though, is when you go down that road, and when you accept CDC's interpretation, you open the door to CDC mandating any manner of health intervention. I mean, what would prevent CDC from turning around and mandating vaccination as a condition to boarding a conveyance? And, you know, and the flu is deadly. The first sentence of the statute says, the Surgeon General, with the approval of the Secretary, is authorized to make and enforce such regulations as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the states or provinces or from one state or possession into any other state or possession. Doesn't that first sentence provide a fair amount of color for the second? Well, no, the Supreme Court in Alabama Realtors said it's the opposite, that the first sentence is cabined by the words that are contained in the second sentence, that the second sentence. So what in the second sentence, I mean, and just assume the sentence is the same, right? I mean, I get if Congress said specifically the CDC can order masks and that would be enough, but assume the second sentence is the same, what word would Congress add to the second sentence to give the CDC the authority to have a mask mandate? You know, you say sanitation is not enough. I think you would have to, you'd have to have something along the lines of, you could say masks specifically can require masks on board interstate conveyances. You could say that, that shall have the authority to, you know, issue regulations to prevent the interpersonal spread or communication of disease on interstate conveyances. I mean, part of the problem with the CDC's reasoning is they come here before you and they say, well, this is a typical sanitation measure that is aimed at isolating and destroying COVID just like what the Supreme Court said in Alabama Realtors. But, you know, the problem is let's assume the mask traps the viral particles, but then what happens? I mean, has anybody watched what people actually do with their masks when they're on an aircraft? They take them off to eat, they put them on their tray tables, they put them in their pockets, they hang them from their ears, they put them in their purses. What you've done on your typical 737-800 is you've created 170 fomites, which is fomite is a term that infectious disease physicians use to describe an object that is capable of transmitting infection. And so what you're doing is you're not actually isolating and destroying the disease, you're just spreading it around by some other means. Now you're talking about efficacy. Well, I'm talking about efficacy, I'm also talking about arbitrary and capricious, but it also goes to the statutory authority because, again, the court in Alabama Realtors said these are all measures that go toward identifying, isolating, and destroying the disease itself. And so if you can imagine a hypothetical scenario, and I'm sorry, I'm getting very close to the end of my time, so if I can offer my hypothetical, let's say in an alternate history, the Chinese government had been completely transparent and had notified the United States that patient zero was on an airplane bound for the United States. The CDC could have given a conditional practique for that aircraft to enter the United States, could have inspected the airplane, identified who had the disease, and quarantined everyone who was suspected of being exposed to it. That's a very discreet authority to prevent disease from entering into the United States. It's not a general license, not a general remit to impose any kind of public health measure it deems fit on the general public. Can you make an argument that the mask mandate has an economic impact the way you have in Alabama Association of Realtors versus HHS? I mean, a credible argument to invoke the major questions doctrine that there's some economic impact that it has on the country to require people who travel to wear a mask? Absolutely, and I see I'm out of time, so if I may answer your question, Judge Wilson. You may. There are two reasons why. First, CDC itself said in the mandate itself, it said if this is a rule, then it is a major rule within the meaning of the Congressional Review Act, and that means that CDC itself is recognizing that this is a rule that will have a significant economic impact. To require someone to buy a mask to wear when you're on a plane or a bus or a train? Well, when you look at, when you just look at one person in isolation, Alabama Association of Realtors, I mean, there's a big impact on landlords. There's a big impact on landlords. Causes a $50 million impact on landlords, but you don't really have that, do you? And you just ask someone to wear a $2.50 mask when you travel on public transportation. Well, I think, you know, the Congressional Review Act doesn't refer in terms of a microeconomic impact on individuals like that. It's more, you look at more of the macroeconomic impact, and there's no doubt that the mandates for wearing masks and other sort of PPE, if you will, had a very significant economic impact on the states. I mean, if you just, if you speak to any of your colleagues here on the Southern District, you may hear about significant litigation happening here just over transactions for masks that went bad. I mean, I have, you know, I've heard just recently of one case and significant fraud involving transactions for the sale of masks that are being litigated here as well. And so you're talking about billions and billions of dollars of economic impact. Let me ask you this. So you're obviously sort of, at least here today, you're sort of mask critical. You made some points about, you know, your argument is that masks don't work, that kind of stuff. I don't make that argument specifically, Judge, please. Well, you know, I think they may work in a highly controlled environment in a medical setting, but the presumption that that could be transferred out into the wild of the general public where you have millions of laymen, you know. Yeah, I get your, I get your point. I guess my question is, did you, did you ever have an opportunity through notice and comment to raise that with the CDC? No, right. Nobody did. Yeah. And so does the CDC ever gone through notice and comment for this rule? No. And also unlike Biden versus Missouri, which your honor very aptly pointed out, had four and they did invite notice and comment. CDC didn't even bother with that. So CDC said, and they're not even making this argument today, which is shocking to me, but I mean, so CDC said, look, we have the authority to have this rule, to not go through notice and comment ever, right. To never submit it to notice and comment. And I mean, what conceivable basis is there for an agency to just say, everyone has to do what we say. We're never going to submit this through notice and comment. And it's just going to exist for as long as we want it to. Well, it was, it was very strange because if you remember at the time, the airlines were already requiring masks. Airports were requiring masks. Here at MIA, they were requiring masks. I mean, I, you know, we, we had travels through here during the time. And if you look at the CDC's own data, cases were on the decline, cases were going down. So, so you don't argue that there wasn't good cause, do you? Your argument is that it just wasn't in the regulation. Can you make an argument that there wasn't good cause of the regulation? Well, I, I, I'm not required to speculate on that judge because under review, under APA review, the agency has the burden and the agency is limited to the reasoning it showed in, in the rule itself. It can't come up with some post hoc justification here and say, well, that's what we really meant. And I apologize that I wasn't able to get to the vacator issue. If there are no other questions, I'll yield the rest of my time to the Solicitor General for the state of Florida. All right. Thank you, counsel. Mr. Whitaker. Thank you, your honor, and may it please the court. Henry Whitaker for the state. The order in this case represents an unprecedented nationwide masking mandate, according to regulate literally every breath of millions of Americans. I think it would maybe help to start, aren't you exaggerating a little bit? Actually, I don't think, I actually understand the rhetorical flourish, but for people who are not traveling, the CDC order doesn't apply, right? There are a lot of, there certainly are a lot of Americans who are traveling, your honor. The majority of Americans don't travel. Millions of Americans do, your honor, and it does regulate every breath. How many people does the United States have, Mr. Whitaker? There are a lot, but there are also millions of travelers. So I think it's a fair statement. My point is that you might be exaggerating just a tad. I respectfully disagree with that, Judge Jordan. I think this is absolutely a broad masking mandate that regulates millions of people and it. No, no, that part, I don't disagree with, but you said the breath of every American. I said what I intended to say, and I apologize if I didn't say this with millions of Americans. And so, but if I could move on perhaps to some of the arguments in the case, and I think it might help to start out with Judge Brasher's point about what could the statute say? Mr. Springer repeatedly referred to conventional public health measures. If the statute said the CDC can enact any conventional public health measure, this would be a much more difficult case. That is not what the statute said. What the statute does, in the words of the Supreme Court, is authorize measures that directly relate to identifying, isolating, and destroying disease. That is not- To go back to your example, if the statute had conventional health measures, you don't think this would be a slam dunk on the merits for the government? I think it would be a much more difficult case. That means you think there's an argument against it. So tell me why that, if there is an argument against it, then those words are insufficient. Well, your honor, one thing about this statute, and I think this is an important point, is that the CDC is not supposed to be an all-purpose public health agency. It's supposed to be a gap-filling agency. States, in the first instance, are supposed to exercise this authority, as is reflected by the CDC's own regulations. What language would seal the deal for the CDC? Putting all the other legal issues aside, if Congress put in this word or phrase or clause, what would clearly give the CDC statutory authority to impose a mask mandate? I suppose the clincher could be if it repealed subsection E of the statute, which is a specific savings clause that recognizes that, as a general matter, state measures in this area are preserved, except to the extent they specifically conflict with anything of the CDC's. But in Alabama Realtors, I think... What's the language, Mr. Whitaker? Well, again, that would be a repeal of subsection E of the statute. No, Congress doesn't want to repeal E. They want to put in language, because they think that's important. They want to give states a role, but they want to put language in that says you can impose a mask mandate at airports and other public transportation facilities. So what language seals that authority for the CDC? And I suppose if it says, additionally, that it occupied the field, that's exclusive of state efforts as well. But what the Supreme Court was referring to... What's the language, Mr. Whitaker? Language suggesting, Your Honor, the Congress hereby occupies the field... No, you're talking preemption. That's my answer, Your Honor, respectfully. So there's no language that Congress could put in. There's no word or phrase that they could just stick into subsection A that would allow the CDC to impose a mask mandate, short of preemption or eliminating subsection E. No, I think that conjoined with saying that they could do conventional health measures would do just fine. But I do think I want to get back to what the Supreme Court is getting at in talking about those kinds of measures. And I think what they were referring to was not any conventional public health measure, but rather traditional quarantine measures, basically making the same point that Judge Meredith made quite well in the Florida v. Becerra case. This is not an all-purpose public health statute. It is, at its core, a quarantine statute. And the measures the CDC took here are miles away from the traditional discrete... What do you mean it's a quarantine measure? Because they do, the Center for Disease Control does have the authority to quarantine. I mean, it says so in the statute, right? They do, Your Honor, and... To prevent the spread of a communicable disease. But I guess what I'm trying to say, Your Honor, is that the best way to understand that list that the Supreme Court, excuse me, that Congress listed in 264A is that those are the measures that typically occur during quarantine. Actually, the statute doesn't expressly mention quarantine, although it is in a section, a subpart of the statute entitled Quarantine and Inspection, which I think is quite telling. This, though, is a measure that sweeps well beyond that. And if the government were right, the federal government were right, that this is a, quote, isolation measure, I suppose that Alabama realtors really would have to have come out the other way. Because the argument in Alabama realtors was that, well, if you keep people in their homes and you say that people can't evict them, they won't dirty the air in communal spaces outside their homes and thereby won't get people sick. And that is exactly the sweeping reading of the statute that the Supreme Court rejected in that case. And that flows directly, I think, from the government's understanding of the term sanitation. And there, you know, Judge Mizell did correctly note that there is a narrow reading of sanitation and there's a broad reading of sanitation. And the main reason for picking the narrower reading is that it's basically going to swallow up the other enumerated measures in the statute. The statute does use the word other measures in addition to sanitation. Certainly, certainly does. Which gives, seems to me, Congress is giving the CDC even broader powers. I mean, you may have a strong argument when it comes to whether or not notice and comment is required, but it just seems strange to me that an agency like the Center for Disease Control doesn't have the authority to require travelers to wear a mask when they travel as a way to prevent the spread of communicable disease in the context of a global pandemic. That's, they don't have that authority. What authority do they have? Well, I actually don't think it is all that odd, Your Honor. Again, I think the CDC is a gap-filling measure. And, you know, the government's referred to the 1918 flu pandemic and the requirement of requirements in 1918. Those were required all by states and local governments. It was not required by the federal government, which did have various public health authorities, sort of the predecessor authorities that were eventually codified in section 264A, which I think is quite telling. And think of the eviction moratorium. Maybe one of the reasons is that Congress in the midst of World War II passed this law because it didn't have similar authority during the influenza pandemic in the earlier part of the 20th century. Is that not a possibility? I don't think it is a possibility actually. And indeed the government's position, at least before this case, was that section 264A merely codified the federal government's pre-existing quarantine authorities, sort of collected them all up and put them in one nice convenient place. But it's pretty telling, you know, the Supreme Court in Alabama Realtors struck down the eviction moratorium. Some 43 states under their police power to regulate- That was different. That was different. It had a $50 to $80 million impact to prevent, you know, that impacted landlords around the United States. Okay. There's no economic impact to require someone to wear a $2 mask when they get on a plane or a train or a bus. I don't disagree with the economic impact. To invoke the major questions doctrine, you know, there's got to be some economic, broad economic or political impact. This case seems to me different than an eviction moratorium to require someone to just wear a mask when you get on a plane and take it off when you get off a plane. It is a different case, but I think the sweeping consequences of the government, of the implications of the government's position in the case make it analytically quite similar. And look, I think in looking at the major questions issue, your honor, you have to look at not just the specific regulation, but also the implications of what the government is telling you about its authority. Their reading of sanitation as basically any measure that may promote sanitation is basically going to have the same kind of sweeping implications of the rule that the Supreme Court rejected in Alabama Realtors, even perhaps sanctioning the very thing that was, the very measure that was rejected in that particular case. With Judge Wilson's permission, let me ask you one more question, Mr. Whitaker. So give me one or two examples of other measures that you think the CDC could take that are not explicitly mentioned, but are consistent with the listing of certain items. Certainly, your honor. One actually quite central other measure I think that would be authorized would be quarantine. You notice that- Quarantine is already statutorily authorized elsewhere. Oh, no, actually, I don't think that's right, your honor. I think that- You mean the government can't quarantine individuals? No, I think they can. And my point, your honor, is that's an other measure that would be authorized by subsection A. My point is that they can do that. And that is another measure. And quarantine and isolation, quarantine of a ship, for example, is not explicitly mentioned among subsection A. Although it is true, as I was trying to develop earlier, that all of those measures are in fact things that normally happen during a typical quarantine. And so it stands to reason that the quarantine itself would certainly be authorized as well. And we have no quarrel with that. And just to follow up on Judge Wilson's major question, if you look at Brown and Williamson, which was the case about whether the FDA could regulate tobacco, the court there was faced with a more narrow question about particular FDA tobacco regulations that dealt with the problem of tobacco as it related to children. But the court looked at the question more broadly and said, look, does the FDA have authority to regulate tobacco? Because the theory would obviously sweep more broadly. Now, I think- Let me ask you two questions because you're over your time. The first one, answer really briefly if you could. If we were to say that the CDC did not have good cause to entirely skip notice and comment, or at least didn't meet the standard to identify it, would we have to address any of these other issues? No, your honor. I think that in and of itself would resolve the case and we would argue vacancy. So that's the answer to that. The second question I had was, could you, unless Judge Wood, did you want to ask? No, but I'll follow up after you're done. Well, the second question I had is just on the remedy issue, which I wanted you to address. What's your best argument that what the district court did here was correct? On the remedy? Yeah, on the remedy, the scope of the remedy. Well, my first answer is not just binding 11th Circuit precedent, your honor, but also Supreme Court precedent, which also equally has affirmed vacanters in similar circumstances. And we cite those cases at pages 24 to 25 of our brief, including the Alabama Environmental Council case from this court, certainly. That's one answer. And I'm happy to get into the merits as well. Well, the other, so, and I think I understand the government's argument on this to be that yes, vacanters have been affirmed, but those cases don't address sort of what the scope of a vacanter means. And here, what the government is saying is that, you know, vacanter means as between the two parties and not having anything beyond that. Assuming that's what they're saying, what do you say to that? Well, I also, well, I'd cite the case that your honor was discussing with the government, first of all, which would seem to address some of that, but even going to the merits itself, I guess I would say it makes little sense in the context of the APA. And I think the plain meaning of set aside is vacate. I also think that it's pretty telling that, which is not something the government even mentions in its brief. You look at section 705 of the APA, it authorizes delaying the effective date of a rule as a preliminary remedy for procedural invalidity. And it would be pretty odd, I think, if the court had expressed authority under section 705 to delay the effective date of a rule, which is relief that's plainly not limited to the particular parties and indeed was explicitly sanctioned by the Supreme Court on the shadow docket in the West Virginia versus EPA case in wasn't authorized itself. Let me ask you, I don't know if you were done. It just seems odd to me to think that the possibility of a nationwide vacater and injunction necessarily means you have to grant nationwide vacater and injunction, right? The existence of first doesn't necessarily make the second one true. The fact that it's allowable doesn't mean that it's always required. And it seems like an odd regime, and then I'll let you answer, of course, an odd regime. Let's say the district court in this case had gone the other way. There would have been lawsuits, I predict, all over the country and other federal district courts trying to get the mask mandate for one legal reason or another struck down or vacated. And those cases would have gone and gone and gone. There could have been dozens or hundreds of them. But if one district court strikes it down, that's essentially the end of litigation because the nationwide vacater makes every other ruling procedurally ineffective. If 99 other district judges in the country had gone the other way on the very same day that the district court in this case ruled, what happens to their decisions? Well, I don't think that's quite right. And I think there is an important safety valve, Your Honor. And it was discussed by this court in the Black Warrior Riverkeepers case from 2015, which is that the district court does have equitable discretion in certain circumstances this court has recognized to remand without vacating a rule. No, no, no. But that's not my hypothetical. My hypothetical is 100 courts rule on the same day. 99 uphold the mask mandate. One strikes it down. But it's a one-way ratchet because the 99 decisions mean nothing if one district court vacates and provides nationwide applicability and injunctive relief. And that just seems like an odd regime to me. Well, not so much, I think, Your Honor. And one reason, one way Congress has addressed that actually in some circumstances, and admittedly not one that applies here, is that there are some contexts in which there are channeling provisions that channel reviewing certain kinds of proceedings to various courts, which is a partial, I understand, and not complete answer to Your Honor's question. But I guess the more fundamental thing I'd say is that it's the regime, actually, that's the standard regime that has governed in administrative law review cases for at least the last 30 years without incident. And we seem to have operated quite well under that regime for a long time until the government in recent years invented this novel argument that vacater is somehow limited to the parties. And they're advancing still another flavor of the same argument. Does that principle apply in Florida the same way? If a state trial judge strikes down an administrative regulation, that vacater is applicable statewide and governs every other jurisdiction in the state of Florida? Well, I actually don't know the answer to that off the top of my head, Your Honor, quite frankly. Should it be the rule in Florida? Well, Your Honor, we certainly in some circumstances, I think it would depend on what the statute says. I think it would actually depend on what the statute says. Same APA statute. Well, I think that we would have to overcome the same kind of arguments that I'm making here. I guess one thing I would point out, though, is that in Biden versus Texas, just last year, the Supreme Court recognized that if there's a the agency has two options. It can either take a new agency action, or it can reconsider the old agency action. Those are the two options it has. It would be pretty odd if those are the agency's options that actually, oh, there's this third option whereby it's invalid as to some people. And so I guess- No, but those two, I mean, tell me if I'm wrong, but those two options are once the legal process has run its course, because the third option is appeal. Until an district court got it right, the agency hasn't run out of legal option. It doesn't have to reconsider. It doesn't have to take new agency action. It's only once it's run the end of the legal road that it has those two options left to it. Well, I do think that in some circumstances, the agency could reconsider the action and potentially root out the appeal before, rather than taking the appeal. I mean, the remedy affects, unless it's stayed, the remedy is the thing that goes into effect regardless of whether there's an appeal. So I'm not sure that the would affect things, but I do think it would be pretty odd if you have, let's say, an arbitrary and capricious challenge and they say, well, the rule is arbitrary and capricious as it applies to what some people and not others. I don't know what the agency does in that circumstance. Can I ask you one last question on this for me? So you mentioned Biden versus Texas. The Supreme Court just held argument in the United States versus Texas or Texas versus the United States. There's so many Texas versus the United States, I can't remember which side of the V, but the Solicitor General made exactly the same argument that the CDC has made here. Are you familiar with that case? Yes, I filed an amicus brief actually on the remedy point. Yeah, that's what I figured. So the question is, do we, let's just assume we're going to rule for you and we're going to affirm what the district court did on something. Should we wait until we wait for that case until we actually issue our opinion? The answer is no. And I think a premise of your honest question I think may not be correct. I don't think the government is actually making the same argument here that they're making in that case. Actually, the argument that they're making here, they basically abandoned in that case in footnote six of their opening brief. They make a completely different argument that is based on a different idea that section 703 of the APA is the real thing that establishes the remedies. Now, many of the things I've been saying actually apply equally to their argument, but I do think it is a different argument than what they're making here. And I invite your honor to look at footnote six in their opening brief to see that contrast. I think that they have forfeited the broader, more sophisticated version of this argument that they're actually making in that case. In this case, I think actually this idea that they could only apply to specific parties is even more easy to rebut and is even more clearly incorrect. So just so I understand then what you're saying is that the argument that the solicitor general is making in that case is broader in the sense that they're not conceding that vacatur is a remedy. Here, there's a concession that sort of vacatur is a remedy. It's just the government is arguing that that doesn't necessarily extend beyond the party, something like that. That's my point, your honor. So I don't think the court needs to wait. Let's just say we accept your argument that there was not good cause to forego notice and comment in this case. What happens, and we don't reach the major questions doctrine, but we have concerns about whether or not the court was right on whether or not the Center for Disease Control has the authority to require a mask mandate. We have some concerns about that. What do we do if there's another global pandemic? The courts in the future would be bound by Judge Mizell's order, wouldn't it, as a precedential authority, right? Well, no, actually, I don't think that they would be bound by Judge Mizell's order. I think that district court precedents in general are persuasive. We rather like- We would have persuasive authority then. It would be persuasive authority, your honor. I guess if the court goes there, I guess I'd not to get into the merits. I'm not sure the court would need to get into the merits. Normally, I think this court's practice is to decide no more than it needs to, or perhaps just say that we're not passing on the propriety of that, which might affect how people view the precedential value of that. But we would have no quarrel with that. I would say that I don't think there's any ambiguity about what the effect of that would be. Judge Mizell's vacater, nationwide vacater, would still be in effect nationwide. There would be no, like, it applies only in the 11th Circuit. No, no, no. That would still be in effect for everyone nationwide. If this court affirmed, it's true that this court's precedent on the point would only be applicable to the 11th Circuit states. But I do think in affirmance, that would be the substantive effect of that. All right. I think we let you go way over. Well, I appreciate the court's intelligence. Thank you very much. Very important case. Thank you, Mr. Whitaker. Mr. Springer, you've reserved some time for rebuttal. Well, let's just say we don't accept your argument on notice and comment. Should we decide the case just based on that basis? I'm not saying we're going to, but hypothetically, and we don't reach major questions, what effect is that going to have on the decision by the district court and how it affects the future in the event that we have another global pandemic and the Center for Disease Control feels as if a mask mandate is necessary and they go through a notice and comment. So, Your Honor, to the extent that the court is, would not be accepting the notice and comment ruling in a particular circumstances of this case. We don't know if we're going to do that or not, but in the event. Right. I understand that, Your Honor. Assuming that that's true, I still think it's important for this court to make clear that it's not accepting the district court's ruling on the statutory authority question for exactly the reason that Your Honor has identified, that going forward, and I mean, you can imagine the next pandemic, if there was an outbreak of SARS and the CDC would want to and need to take swift action in order to control such a pandemic in the future. But I mean, do we usually, I mean, I'm unaware, would that even be a holding if we said that? I mean, it seems like that would just be pure obiter dicta if we said, oh, by the way, the rule is illegal and we're affirming the district court for this reason, but hey, there's some stuff in the district court order that we disagree with. It's unrelated to this. I mean, wouldn't that just be dicta? Your Honor, the court doesn't have to go on, go beyond the issue of notice and comment. I think the important thing here is that the potential collateral estoppel effect of the district court's ruling could tie up future CDC actions and the CDC... I mean, I just don't understand how that could possibly be. I mean, could you just explain that to me, how that could possibly be? If we say this rule is invalid for this reason, I mean, district court opinions aren't even precedential for the district court judge who issued the opinion. I mean, my year as a district court judge, I've cited that often so I could change my mind. How does it matter? Your Honor, that's correct. And we would just urge the court to make clear that it wasn't accepting these other rulings, even if it didn't go on to actually make a ruling on what the right answer is on the statutory authority question. So you're sort of filing a motion for dicta? Your Honor, again, I think here we think that this piece of the case is one that the Supreme Court has answered the question, has given us that the scope of the CDC's authority, it's told us exactly what the statute covers and mass fall within the core of that authority. Let me ask you a question about remedy and playing off of Judge Wilson's hypothetical to you. Again, assuming only for purposes of discussion that you're going to lose on notice and comment, how does the remedy play into it? Like, how do you apply vacater on a notice and comment issue in a way that only affects the litigants before the district court? I understand the other argument about statutory authority and why you think a nationwide vacater and injunction is improper. But if you're dealing with a procedural irregularity, how do you limit the relief to only the litigants before the district court? Your Honor, we haven't briefed this exact question. Again, questions of equitable principles and article three limitations, counsel toward just a vacater that would apply to the specific plaintiffs in the case. And then the CDC would have to decide how to move forward. What does that mean? Judge Brasher asked a question about a trip from Atlanta to Cincinnati, but I'll make it even more difficult. Those litigants are going to bring in a copy of the 11th Circuit opinion in this case and say, hey, I'm one of the litigants not wearing a mask. Your Honor- That's the way you would enforce your non-nationwide vacater remedy? Your Honor, I don't think there's anything strange about that because other people have not shown that they have article three standing to challenge this rule and didn't agree to be bound by the judgment ahead of time. So it creates this inequitable one-way class action where, as Your Honor noted, at times a successful litigation by one plaintiff can result in the rule being vacated nationwide. If the CDC had not said anything at all, putting aside whether or not it's one sentence was boilerplate or whether it incorporated the previous findings, et cetera, if the CDC had said nothing on the good cause issue and had just issued this without notice and comment, that would be a violation of the APA, right? Your Honor, if the CDC didn't have any good cause findings- No, it didn't even attempt to show it. It just issued the rule, the substantive regulation in the Federal Register, but said nothing about good cause or why it needed to do this very quickly without notice and comment, that would be invalid procedurally under the APA, right? Your Honor, the CDC would likely have to go through notice and comment in that circumstance. If you have that hypothetical, is nationwide vacator appropriate? Your Honor, I imagine what the court might do in that situation is remand without vacator if it looked like the CDC would be able to establish good cause. And I suppose here the court could pursue that course as well. I mentioned we haven't briefed it because we didn't talk about the specifics of ruling on one ground versus another, but here the CDC, even if this didn't connect its findings to the good cause statement, although we think that it did, the proper course would be to remand without vacator or not to vacate the rule. You say the argument by Mr. Whitaker that one of the specific things a court can do under the APA is to delay the effective date of a rulemaking, a rule. Doesn't that strongly suggest that judicial review means that you can stop the rule for all people and not just for the parties? How do you read that? Your Honor, I would direct this court to the United States' brief in United States v. Texas. We haven't briefed the issues here, but we do address that issue in those briefs. The reason we're in sort of a slightly different circumstance is that the Black Warrior Riverkeeper case from this court says that vacator is the ordinary remedy in an APA case. It also makes the statement that I think we're already sort of past that question, at least based on the current state of 11th Circuit law. Just to follow up briefly on that, I asked Mr. Whitaker, should we wait for the United States v. Texas case? What do you think about that? Your Honor, I don't think that the court would need to wait for that case. I think that the principles that counsel toward limiting the remedy to the particular plaintiffs that have identified themselves and agreed to be found are well-established to the extent, again, that the court needs to reach that question. Thank you, counsel. Your Honor, if there are no further questions, we'd ask that this court reverse the district court. Thank you.